FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

APR 15 2010

Stephan Harris, Clerk
Cheyenne

David Lindsey
7887 E. Belleview Ave. Ste. 1100
Englewood CO 80111
Phone Number: (303) 228-2270
Fax Number: (303) 228-2271
Email: david@mdavidlindsey.com

David A. Lane
Darold W. Killmer
Rebecca T. Wallace
Lisa Sahli
Qusair Mohamedbhai
**KILLMER, LANE & NEWMAN, L.L.P.**
1543 Champa Street, Suite 400
The Odd Fellows' Hall
Denver, CO 80202
Phone Number: (303) 571-1000
Fax Number: (303) 571-1001

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| **Plaintiff(s),** ) | |
| ) | |
| **WILLIAM AYERS** ) | |
| **MEGHAN LANKER** ) | Case No. 10-CV-79-D |
| ) | |
| vs. ) | |
| ) | |
| **Defendant(s)** ) | |
| ) | |
| **UNIVERSITY OF WYOMING** ) | |
| **TOM BUCHANAN, in his official capacity** ) | |

### PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Williams Ayers and Meghan Lanker, by their attorneys David A. Lane, Darold W. Killmer, Sara Rich, Qusair Mohammedbhai, Rebecca T. Wallace and Lisa Sahli of the law firm of KILLMER, LANE & NEWMAN, LLP, and David Lindsay hereby submit this Brief in Support of their Motion for Preliminary Injunction.

### I.   INTRODUCTION AND BACKGROUND

All statements of fact set forth in the simultaneously filed Complaint are hereby incorporated into this Brief as though set forth fully herein.

### II.   PARTIES

All statements of fact regarding the parties set forth in the simultaneously filed Complaint are hereby incorporated into this Brief as though set forth fully herein.

### III.   LEGAL ARGUMENT

#### A.   Plaintiffs Have a Particularly Strong Basis For Meeting The Preliminary Injunction Standard in a First Amendment Case

The University's denial of a forum for Professor Ayers's public speech is an unconstitutional prior restraint on such speech and burdens the freedom of speech of each plaintiff, thus creating a strong presumption that a preliminary injunction should issue.

A plaintiff in a First Amendment case must meet four conditions to obtain a preliminary injunction:  A Plaintiff must show that (1) they will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood the Plaintiff ultimately will prevail on the merits; (3) the threatened injury to the Plaintiff outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. *American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1155 (10th Cir. 1999).

In a First Amendment case, the second condition--likelihood of success on the merits--plays a decisive role.  Once plaintiffs have shown that their freedom of speech is burdened, the other injunction conditions will typically be met.  First, where First Amendment rights are burdened, there is a presumption of irreparable harm.  *See Cmty.*

*Communications v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981); *Johnson*, 194 F.3d at 1163. The reason for the presumption is self-evident. As the Supreme Court put it, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *see also Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1076 (10th Cir. 2001)(court assumes irreparable injury where deprivation of speech rights). The denial of Professor Ayers' forum for a public speech is manifestly a prior restraint, and the injury is irreparable.

The balance of harms test will most often be met once a First Amendment plaintiff demonstrates a likelihood of success on the merits. A threatened injury to plaintiffs' constitutionally protected speech will usually outweigh the harm, if any, the defendants may incur from being unable to enforce what is in all likelihood an unconstitutional statute or directive. *See Johnson*, 194 F.3d at 1163.

Plaintiffs can satisfy the "public interest test" because the denial of the public forum for the speech on April 28, 2010 burdens their free speech rights. Injunctions blocking state action that would otherwise interfere with First Amendment rights are consistent with the public interest. *Elam Constr. v. Reg. Transp. Dist.*, 129 F.3d 1343, 1347 (10th Cir.1997)("The public interest...favors plaintiffs' assertion of their First Amendment rights."); *Utah Licensed Beverage Ass'n*, 256 F.3d at 1076; *Johnson*, 194 F.3d at 1163; *Local Org. Comm., Denver Chap., Million Man March v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996) Plaintiffs Have a Strong Likelihood of Success on the Merits Because Defendants' Ban of the Public Forum Infringes on Plaintiffs' Core First Amendment Rights

    **1.    Banning the Public Forum Constitutes an Impermissible Prior Restraint on Constitutionally Protected Speech**

The decision by the University prohibiting a speech by Professor Ayers on April 28, 2010 constitutes, by definition, a prior restraint on speech. The United States Supreme Court has repeatedly emphasized that the First Amendment must be vigorously

protected to allow the free and open exchange of ideas, and this core constitutional protection is most precious on our college and university campuses:

> Yet, the precedents of this court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, "the vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools," *Shelton v. Tucker,* 364 U.S. 479, 487 (1960)  The college classroom with its surrounding environs is peculiarly the "marketplace of ideas," and we break no new constitutional ground in reaffirming this Nation's dedication to safeguarding academic freedom. *Keyishian v. Board of Regents,* 385 U.S. 589, 603 (1967); *Sweezy v. New Hampshire,* 354 U.S. 234, 249-250 (1957)(plurality opinion of Mr. Chief Justice Warren), 262 (Frankfurter, J., concurring in result).

*Healy v. James,* 408 U.S. 169, 180-181 (1972). *Healy's* powerful statement that people must be allowed to express disagreement about important issues, which views cannot be suppressed particularly by prior restraint, has become a well-worn touchstone of our nation's First Amendment jurisprudence.

Similarly, the Court has not wavered in its view that the government cannot abridge the expressive activities of peaceful assembly and association:

> Among the rights protected by the First Amendment is the right of individuals to associate to further their personal beliefs. While the freedom of association is not explicitly set out in the Amendment, it has long been held to be implicit in the freedoms of speech, assembly, and petition. See, *e. g., Baird* v. *State Bar of Arizona,* 401 U.S. 1, 6 (1971); *NAACP* v. *Button,* 371 U.S. 415, 430 (1963); *Louisiana ex rel. Gremillion* v. *NAACP,* 366 U.S. 293, 296 (1961); *NAACP* v. *Alabama ex rel. Patterson,* 357 U.S. 449 (1958) (Harlan, J., for a unanimous Court).

*Id.* at 181. It is plain that Professor Ayers has a fundamental First Amendment right to express and explain his views in a public forum, and that Ms. Lanker has a constitutionally protected right to peaceably assemble to hear those views, and to express her views in agreement or dissent.

Plaintiff Lanker complied with the University's administrative regulations in reserving the campus facilities for the public forum.  Until the University can meet its

extraordinarily "heavy burden" of justifying its prior restraint of legitimate First Amendment activities, the public forum must be allowed to go forward. As the *Healy* Court held:

> But, apart from any particular issue, once petitioners had filed an application in conformity with the requirements, the burden was upon the College administration to justify its decision of rejection. *See, e. g., Law Students Civil Rights Research Council v. Wadmond*, 401 U.S. 154, 162-163 (1971); *United States v. O'Brien*, 391 U.S. 367, 376-377 (1968); *Speiser v. Randall*, 357 U.S. 513 (1958). It is to be remembered that the effect of the College's denial of recognition was a form of prior restraint, denying to petitioners' organization the range of associational activities described above. While a college has a legitimate interest in preventing disruption on the campus, which under circumstances requiring the safeguarding of that interest may justify such restraint, a "heavy burden" rests on the college to demonstrate the appropriateness of that action. See *Near v. Minnesota*, 283 U.S. 697, 713-716 (1931); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 418 (1971); *Freedman v. Maryland*, 380 U.S. 51, 57 (1965).

*Id.* at 184. As the Supreme Court observed in *Southeastern Promotions, Ltd. V. Conrad*, 420 U.S. 546, 552-53 (1975), Defendants' "action here is indistinguishable in its censoring effect from the official actions consistently identified as prior restraints in a long line of this Court's decisions. See *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150-151 (1969); *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958); *Kunz v. New York*, 340 U.S. 290, 293-294 (1951); *Schneider v. State*, 308 U.S. 147, 161-162 (1939); *Lovell v. Griffin*, 303 U.S. 444, 451-452 (1938). In these cases, plaintiffs asked the courts to provide relief where public officials had forbidden the use of public places for protected speech. The restraints took a variety of forms, with officials exercising control over different kinds of public places under the authority of particular statutes. All, however, had this in common: they gave public officials the power to deny use of a forum in advance of actual expression." *Conrad, supra* at 552-3 (granting injunction to petitioners who alleged their First Amendment rights were violated by City that denied use of public forum to present theatrical production of "Hair"). The Court has

consistently disallowed government prohibition of speech that was not the product of clearly established and content-neutral procedures for determining the propriety of the speech. "Invariably, the Court has felt obliged to condemn systems in which the exercise of such authority was not bounded by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship—reflecting the natural distaste of a free people—is deep-written in our law." *Id.* at 553.

The fact that the conduct here at issue constitutes a restraint on speech *prior* to its occurrence carries substantial constitutional significance. The Supreme Court has analyzed it this way:

> The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable. *See Speiser* v. *Randall*, 357 U.S. 513 (1958)."

The UW prior restraint is therefore constitutionally infirm, and must be enjoined to allow the speech to go forward.

    **2.    The University's Ban of the Public Forum is an Unconstitutional Content-Based Discrimination Against Unpopular Speech**

Defendants' ban of the public forum was infected and motivated in a material way by the Defendants' personal distaste and disagreement with the anticipated content of Professor Ayers' speech.

The Supreme Court applies "the most exacting scrutiny" to restrictions that impose different burdens upon speech based on the viewpoint of the speaker. *Turner Broadcasting Systems, Inc.* v. *FCC*, 512 U.S. 622, 642 (1994); *Simon & Schuster v. New*

*York Crime Victims Bd.*, 502 U.S. 105, 118 (1991). The Court analyzed this principle eloquently in *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943): "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.* at 642. The Court reasoned:

> [a]s governmental pressure toward unity becomes greater, so strife becomes more bitter as to whose unity it shall be. Probably no deeper division of our people could proceed from any provocation than from finding it necessary to choose what doctrine and whose program public educational officials shall compel youth to unite in embracing. Ultimate futility of such attempts to compel coherence is the lesson of every such effort from the Roman drive to stamp out Christianity as a disturber of its pagan unity, the Inquisition, as a means to religious and dynastic unity, the Siberian exiles as a means to Russian unity, down to the fast failing efforts of our present totalitarian enemies. Those who begin coercive elimination of dissent soon find themselves exterminating dissenters. Compulsory unification of opinion achieves only the unanimity of the graveyard.

*Id.* at 641. The Court in *Barnette* wisely observed that the protection of dissenting viewpoints, of views that stray far from the popular orthodoxy, is compelled by our Constitution, even where it hurts the most:

> we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization. To believe that patriotism will not flourish if patriotic ceremonies are voluntary and spontaneous instead of a compulsory routine is to make an unflattering estimate of the appeal of our institutions to free minds. We can have intellectual individualism and the rich cultural diversities that we owe to exceptional minds only at the price of occasional eccentricity and abnormal attitudes. When they are so harmless to others or to the State as those we deal with here, the price is not too great. But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.

*Barnette*, supra at 641-2. It is beyond debate that Defendants have banned Professor Ayers because his viewpoint is not aligned with the University's accepted orthodoxy.

*See, e.g., Texas v. Johnson*, 491 U.S. 397, 413 n.9 (1989)("one's attitude toward the flag and its referents is a viewpoint"); *Barnette* 319 U.S. at 642 (constitution guarantees "right to differ as to things that touch the heart of existing order"). The popular and political pressure brought to bear on Defendants was such that they issued press releases, essentially apologizing to the entire country for the previously rescinded invitation, and the assumed content of Professor Ayers' not-yet-given speech.

The First Amendment requires that the University must allow the public forum to occur on April 28, 2010, notwithstanding the likelihood that University officials will disagree with Professor Ayers' speech, notwithstanding the possibility that some who hear his speech may be made uncomfortable by it, and even assuming that some listeners may respond inappropriately or disruptively. The First Amendment tolerates no lesser result.

### IV. CONCLUSION

As Justice Hugo Black succinctly observed: "I do not believe that it can be too often repeated that the freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish." *Communist Party* v. *SACB*, 367 U.S. 1, 137 (1961). For the reasons stated, Plaintiffs respectfully request that this Court grant their Motion for a Preliminary Injunction and prohibit Defendants from barring the public forum on April 28, 2010 at the University of Wyoming, in Laramie, Wyoming.

Dated this 15th day of April 2010.

KILLMER, LANE & NEWMAN, LLP

s/ David A. Lane
_____

**DAVID A. LANE**
**DAROLD W. KILLMER**
**QUSAIR MOHAMEDBHAI**
**SARA RICH**

-8-

> LISA R. SAHLI
> REBECCA T. WALLACE
> 1543 Champa Street, Suite 400
> Denver, CO 80202
> (303) 571-1000
> dlane@kln-law.com
> dkillmer@kln-law.com
> qmohamedbhai@kln-law.com
> srich@kln-law.com
> rtwallace@kln-law.com
> lsahli@kln-law.com
>
> ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th[th] day of April, 2010, a true and correct copy of the foregoing BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION, was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Tom Rice, Esq.
Counsel for UW
trice@sgrllc.com

s/ David A. Lane