Thomas S. Rice, No. 6-2928
Monica N. Kovaci, *pro hac vice*
Senter Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, Colorado 80290
Tele: (303) 320-0509
Fax: (303) 320-0210
Email: trice@sgrllc.com
      mkovaci@sgrllc.com
**Attorneys for Defendants**

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| Plaintiff(s),  )  )  WILLIAM AYERS  )  MEGHAN LANKER  )  )  vs.  )  )  Defendants  )  )  UNIVERSITY OF WYOMING  )  TOM BUCHANAN, in his official capacity  ) | Case No. 10-cv-00079-WFD |

### RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Defendants, **UNIVERSITY OF WYOMING** and **TOM BUCHANAN**, by their attorneys, **THOMAS S. RICE** and **MONICA N. KOVACI** of the law firm **SENTER GOLDFARB & RICE, L.L.C.**, hereby submit the following Response to Plaintiffs' Motion for Preliminary Injunction as follows:

## I.  INTRODUCTION

This case arises from a request made by Plaintiff Meghan Lanker to rent the University of Wyoming Sports Complex for a speech proposed to be given by Professor William Ayers on April 28, 2010.  The University, through its President, Defendant Tom Buchanan, has refused the requested use on public safety and security grounds.  The University received serious threats and other information concerning potential violence in connection with an earlier planned appearance by Ayers that was to occur on April 5 and 6, 2010.  [See Affidavits of Milton D. Ontiveroz, Kay A. Persichette, Keith Geis, and Sherilyn Likewise, which are appended hereto as **Exhibits A, B, C, and D**, respectively.]  The earlier appearance, which is not in issue here, was cancelled by the faculty member who had invited Ayers.

As will be addressed in greater detail below, the Sports Complex is an athletic facility that is on occasion rented for other purposes.  It is located on the University campus in close proximity to many other University facilities and holds roughly 1200 people.

Plaintiffs filed their Complaint in the matter on April 15, 2010.  Contemporaneously, Plaintiffs also filed a motion for preliminary injunction that is now before the Court.

## II.  ARGUMENT

To obtain a preliminary injunction, Plaintiffs have the burden to establish the following: (1) a substantial likelihood of success on the merits; (2) they will suffer irreparable injury unless the injunction issues; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 374 (2008); *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).  Where the preliminary injunction

sought would require the nonmoving party to take affirmative action, or the injunction would afford the movants all the relief they could recover at the conclusion of a full trial on the merits, the movants have a heightened burden and the court must more closely scrutinize the requested injunction to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.  *United States v. Bergman*, --- F.3d ---, 2010 WL 1131488, at *15-16 (10th Cir., Mar. 25, 2010) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc)); *see also Schrier*, 427 F.3d at 1259-62.  Plaintiffs' right to such an extraordinary remedy must be clear and unequivocal. *Beltronics, USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). Plaintiffs fail to meet this heightened burden.

    A.    **<u>Substantial Likelihood of Success on the Merits</u>**

In order to succeed on the merits of their case, Plaintiffs must show that the restriction imposed by the University is unconstitutional.  Plaintiffs are unable to show a substantial likelihood of success on the merits of their case.

The extent to which access to government property may be limited under the First Amendment depends upon the nature of the forum in which the speech takes place.  *See Cornelius v. NAACP Legal Defense & Educ. Fund*, 473 U.S. 788, 797 (1985); *Wells v. City and County of Denver*, 257 F.3d 1132, 1138-39 (10th Cir. 2001).  In this instance, the University Sports Complex is a limited public forum and the University is allowed to impose reasonable restrictions on speech.  The University's refusal to rent the Sports Complex for Professor Ayers'

speech, a private event that threatens the safety of the school and its students and staff, meets this standard.

The three types of forums that may exist on government property are traditional public forums, designated public forums, and private forums. *Cornelius*, 473 U.S. at 802. Also, in recent years, the Supreme Court has identified a new hybrid forum—limited public forum. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106-07 (2001); *Rosenberg v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 829 (1995).

The Sports Complex is neither a traditional public forum nor a private forum. Traditional public forums are places that by long tradition have been devoted to assembly and debate, such as public streets, sidewalks, and parks. *Cornelius*, 473 U.S. at 802. On the other end of the spectrum, nonpublic forums consist of public property that are not by tradition or designation a forum for public communication, such as military bases, school internal mail systems, and city transit buses. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46-47 (1983). In this instance, the Sports Complex is more properly characterized as a limited public forum.

Courts have rejected the proposition "that a campus must make all of its facilities equally available to students and nonstudents alike, or that a university must grant free access to all of its grounds or buildings." *Widmar v. Vincent*, 454 U.S. 263, 268 n.5 (1981). "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida*, 385 U.S. 39, 47 (1966). A university that has decided to permit certain areas to be used by some outsiders, however, cannot exclude others just because it disapproves of their message. *E.g.*, *Rosenberger*, 515 U.S. at 828-30.

The University of Wyoming, here, has not limited Ayers' speech because it disapproves of his message. The University's actions are in response to the serious threats of violence which it received that are related and directed to Ayers' speech. Although "undifferentiated fear or apprehension of disturbance is not enough to overcome" First Amendment rights, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 508 (1969), the threats involved here show a specific intent to cause violence if Ayers is allowed to speak on campus. "The danger here is far more serious and palpable." *Morse v. Frederick*, 551 U.S. 393, 408-09 (2007). And the fact that Ayers' speech is not a school sponsored event does not change the University's interest in maintaining peace and order on its campus. *Smith v. Tarrant County Coll. Dist.*, --- F.Supp.2d ---, 2010 WL 903953, at *15 (N.D. Tex., Mar. 15, 2010) ("Maintaining student safety on campus and order generally are substantial interests as well."); *see Bd. of Tr. v. Fox*, 492 U.S. 469, 475 (1989) (student safety was substantial interest in justifying university's restriction on commercial speech). The gravity and seriousness of the threats received legitimates the University's refusal to rent the Sports Complex for Ayers' speech. *Morse*, 551 U.S. at 424-25 (Alito, J., concurring) (school officials must have authority to intervene before speech leads to violence); *Healy v. James*, 408 U.S. 169, 180, 184 (1972) ("acknowledged need for order" on campus; suggesting that a college may have a legitimate interest in preventing disruption on the campus, which, under circumstances requiring the safeguarding of that interest, may justify speech restriction); *Brooks v. Auburn University*, 412 F.2d 1171, 1173 (5th Cir. 1969) (while university president could not bar the scheduled appearance and speech of a reverend, court noted that it did not hold that the president could not bar speaker if appearance would lead to violence or disorder, or if the

university would be otherwise disrupted); *Franklin v. Atkins*, 409 F.Supp. 439, 451-52 (D. Colo. 1976) (university's failure to hire professor did not infringe professor's First Amendment rights where there was substantial threat of material disruption to university activities and perhaps even bringing injury to persons or property of the university); *see also Milk Wagon Drivers Union of Chicago v. Meadowmoor Diaries*, 312 U.S. 287, 294-95 (1941) (Supreme Court upheld injunction prohibiting all picketing where there had been instances of violence).

### 1. Limited Public Forum

The University Sports Complex is most properly characterized as a limited public forum. A limited public forum "arises where the government allows selective access to some speakers or some types of speech in a nonpublic forum, but does not open the property sufficiently to become a designated public forum." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1202 (10th Cir. 2007); *see Pleasant Grove City, Utah v. Summum*, 129 S.Ct. 1125, 1132 (2009). Because a university contains a variety of forums, courts look to the property's physical characteristics and location, the traditional use of the property, the objective use and purposes of the space, and the government's intent and policy with respect to the property. *Bowman v. White*, 444 F.3d 967, 976-78 (8th Cir. 2006).

Here, the University Sports Complex is surrounded by other sports arenas, and the University has traditionally allowed access only to University groups or for athletic related events. [See Affidavit of Pamela K. Shuster, appended hereto as **Exhibit E**.] Over the last several years, the Complex has been rented for only one non-University and non-athletics related event: a speech by former-President Bill Clinton in March 2008. The University facilities are

6

generally not available for such political campaign speeches, and the University President, Dr. Buchanan, made a special exception for that event.  President Clinton's speech, however, did not involve the significant threats of violence as were made in response to Ayers' visit.  In addition, all security for the event was under the direction of the United States Secret Service.  The exception allowed for the Clinton speech did not turn the Sports Complex into a designated public forum.  *Gilles v. Garland*, 281 Fed.Appx. 501, 510-11 (6th Cir. 2008) (library lawn was limited public forum); *ACLU v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005) (University of Maryland campus was a limited public forum); *Piarowski v. Illinois Cmty. Coll.*, 759 F.2d 625, 629 (7th Cir. 1985) (that chairman of art department sometimes invited artists from outside the college to exhibit their work the college gallery did not make the gallery a public forum, just as a teacher's inviting a guest lecturer to his classroom would not make the classroom a public forum).

      Government limitation on private speech in a limited public forum is constitutional if the restriction does not have viewpoint discrimination and it is reasonable in light of the purpose served by the forum.  *See Good News Club*, 533 U.S. at 106-07.  In this instance, the only reason for the University's refusal to rent the Sports Complex for the Ayers' speech is the threats of violence that the school had received pertaining to Ayers' previously scheduled visit.  The University's limitation of Ayers' speech does not involve viewpoint discrimination and is considered reasonable in light of the school's concern in protecting its students, faculty, and the public, as well as University facilities from violence and injury.

### 2. Designated Public Forum

A designated public forum is an area that the government has intentionally opened for expressive activity, treating the property as if it were a traditional public forum. *Summum v. Callaghan*, 130 F.3d 906, 914 (10th Cir. 1997); *see Pleasant Grove City*, 129 S.Ct. at 1332. In making this determination, courts look to the policy and practice of the entity. *Perry*, 460 U.S. at 46-47. For the reasons discussed above, the Sports Complex has not been sufficiently opened to become a designated public forum.

However, even if the Sports Complex is determined to be a designated public forum, reasonable time, place, and manner regulations are permissible. *Id.* at 46. Such restrictions are constitutional if they are justified without regard to the content of the speech, they are narrowly-tailored to serve a significant governmental interest, and there are ample alternative channels for communication of the desired message. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). In determining whether a restriction is content-neutral, the focus is upon the government's purpose in imposing the restriction, not the effect that the restriction has upon a given speaker. *See id.* Thus, a restriction may be content-neutral, even though it affects only certain speakers. *Id.* The narrowly tailored requirement is satisfied so long as the regulation promotes a significant government interest that would be achieved less effectively absent the regulation. *See id.* at 797-99. The University is not required to pick the least intrusive means of achieving the desired end. *Id.*

If the Court determines that the Sports Complex is a designated public forum, the University's refusal to rent the venue is a permitted reasonable time, place, and manner

restriction. The school's concerns regarding Ayers' speech are not in any way related to the content of his speech; but rather, the restriction is narrowly tailored to the University's significant interest in heeding threats of violence and protecting its students, faculty, facilities and the public from injury. *See Tarrant County Coll.*, 2010 WL 903953, at *15. Also, Plaintiffs have ample alternative channels for communication of their desired message. Nothing prohibits Plaintiffs from distributing written copies of Ayers' speech, renting another government facility, or even speaking in a public forum such as Prexy's Pasture, an open area in the middle of the University campus. *Cf. Frisby v. Schultz*, 487 U.S. 474, 482-84 (1988) (ordinance prohibiting picketing on private property upheld where ordinance allowed for the more general dissemination of a message). In fact, upon information and belief, Plaintiffs have already rented another city-owned facility in Laramie to hold the speech. In this instance, Plaintiffs are simply denied the opportunity to rent the Sports Complex.

A content-based restriction on speech, on the other hand, must be narrowly tailored to serve a compelling government interest. *See Cornelius*, 473 U.S. at 800. Considering the amount and type of threats received by the University regarding Ayers' speech, the University's refusal to rent the Sports Complex for the speech could also meet this standard. "[W]e live in a time when school violence is an unfortunate reality that educators must confront on an all too frequent basis." *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 987 (9th Cir. 2001). For this reason, the school's restriction is narrowly tailored to serve the University's compelling interest in protecting its students, faculty, facilities and the general public.

### 3. Freedom of Association and Freedom of Assembly

The Court need not separately analyze Plaintiffs' freedom of association and assembly claims. The freedom of association involved here encompasses activities such as speech and assembly. *Watchtower Bible Tract Soc. v. Sanchez-Ramos*, 647 F.Supp.2d 103, 119-20 (D. Puerto Rico 2009). And, as in *Watchtower Bible*, where certain Jehovah's witnesses were not allowed to enter certain private neighborhoods, Plaintiffs have not pointed to any facts that they are prevented from associating together or assembling. To the contrary, Plaintiffs have already rented another government venue for the event. Plaintiffs are simply not given the right to rent the Sports Complex, but they have not been prevented from associating and meeting in other places. *See McCullen v. Coakley*, 573 F.Supp.2d 382, 418-19 (D. Mass. 2008).

### B. Irreparable Injury

Considering that Plaintiffs have failed to show that they are substantially likely to prevail on the merits, the Court need not address this element.

### C. Balance of Equities

Under this element, Plaintiffs must show that the threatened injury to them outweighs the injury to Defendants. *See Schrier*, 427 F.3d at 1258. Plaintiffs are unable to meet this burden. The threatened injury to Defendants is great as they risk an attack on the University if Ayers is allowed to speak there. Plaintiffs, on the other hand, have already booked another venue for the speech and they thus do not risk the possibility of continuing or future harm. *See Johnson v. Boreani*, 946 F.2d 67, 72 (8th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994) (plaintiffs are not eligible for injunctive relief merely on the basis of past

conduct unless they prove that the problems of the past would likely recur unless enjoined). Accordingly, the risk of injury is greater for Defendants than for Plaintiffs and Plaintiffs fail to meet this element.

### D. Public Interest

In ruling on a preliminary injunction motion, courts also consider the public interest. In this instance, it is in the public interest to deny Plaintiffs' preliminary injunction motion. The serious threats received by University officials regarding Ayers' speech threaten the University with injury and puts its students, faculty and the public in danger. Plaintiffs are therefore unable to meet this element.

### III. CONCLUSION

To conclude, Plaintiffs fail to satisfy their heightened burden to obtain a preliminary injunction. The University Sports Complex is a limited public forum and the University's interest in protecting the safety of its students, faculty, and property, as well as the general public, is a reasonable justification for its refusal to rent the Complex to Plaintiffs. In addition, Plaintiffs have failed to show that the balance of equities and public interest elements of the test weigh in their favor.

**WHEREFORE**, Defendants respectfully request that this Court deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted this 24th day of April, 2010.

   s/ Thomas S. Rice
Thomas S. Rice

   s/ Monica N. Kovaci
Monica N. Kovaci
Senter Goldfarb & Rice, L.L.C.
1700 Broadway, Suite 1700
Denver, Colorado 80290
Tele:(303) 320-0509

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 24th day of April, 2010 a true and correct copy of the above and foregoing **RESPONSE TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

David Lindsey
7887 E. Belleview Avenue, Suite 1100
Englewood, Colorado 80111
david@mdavidlindsey.com

David A. Lane
Darold W. Killmer
Qusair Mohamedbhai
Killmer, Lane & Newman, L.L.P.
1543 Champa Street, Suite 400
Denver, Colorado 80202
dlane@kln-law.com
dkillmer@kln-law.com
qmohamedbhai@kln-law.com

   s/ Monica N. Kovaci
Monica N. Kovaci

12