IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING


**MEGHAN LANKER; WILLIAM AYERS**,

        Plaintiffs,          **CASE NO. 10-CV-79-D**

VS.                        **APRIL 27, 2010**
                             **1:43 P.M. - 2:25 P.M.**

**UNIVERSITY OF WYOMING**;
**UNIVERSITY OF WYOMING PRESIDENT**,    **CASPER, WYOMING**
*in his official capacity, also
known as* Tom Buchanan,

        Defendants.


**CITY OF LARAMIE**,

        Intervenor.

---

**TRANSCRIPT OF ORAL RULING
ON MOTION FOR PRELIMINARY INJUNCTION
BEFORE THE HONORABLE WILLIAM F. DOWNES
CHIEF UNITED STATES DISTRICT JUDGE**

---

**APPEARANCES:**   (Page 1 of 2)

(All Counsel Appearing Via Video from Denver, Colorado)

For Plaintiffs:           **Darold W. Killmer**
                        **David A. Lane**
                        **Qusair Mohamedbhai**
                        KILLMER LANE & NEWMAN
                        The Odd Fellows' Hall, Suite 400
                        1543 Champa Street
                        Denver, Colorado 80202

                        **Michael David Lindsey**
                        7887 East Belleview Avenue
                        Suite 1100
                        Englewood, Colorado 80111

1   **APPEARANCES:**   (Page 2 of 2)

2   For Defendants:                    **Thomas S. Rice**
                                       **Monica N. Kovaci**
3                                      SENTER GOLDFARB & RICE
                                       1700 Broadway, Suite 1700
4                                      Denver, Colorado 80290

5

6   Reported By:                       **Jamie L. Hendrich, CSR-RPR-CRR**
                                       Official Federal Court Reporter
7                                      U.S. District Courthouse
                                       111 South Wolcott, Room 217
8                                      Casper, Wyoming 82601
                                       (307) 265-5280
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **CITATION INDEX**

2   *American Civil Liberties Union v. Johnson*,
3   194 F.3d 1149, 1155 (10th Cir. 1999) ....................   5

4   *Beckerman v. City of Tupelo*,
5   664 F.2d 502 (Former 5th Cir. 1981) ...................... 17

6   *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940) ....... 19

7
    *Center for Bio-Ethical Reform, Inc. v. Los Angeles
8   County Sheriff's Department*, 533 F.3d 780
    (9th Cir. 2008 ) ........................................ 11
9

10  *Community Communications Company, Inc. v.
    City of Boulder*, 660 F.2d 1370, 1376
11  (10th Cir. 1981) ........................................ 21

12
    *Cornelius v. NAACP Legal Defense &
13  Education Fund, Inc.*, 473 U.S. 788 (1985) ............... 6

14
    *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ............... 21
15

16  *Forsyth County v. Nationalist Movement*,
    505 U.S. 123, 134 (1992) ................................ 11
17

18  *Frye v. Kansas City Missouri Police Department*,
    375 F.3d 785 (8th Cir. 2004) ........................... 11
19

20  *Hague v. CIO*, 307 U.S. 496, 516 (1939) ................. 16

21
    *KKK v. Martin Luther King Jr. Worshippers, et al.*,
22  735 F.Supp. 745 (M.D.Tenn. 1990) ....................... 16

23
    *Local Organizing Committee, Denver Chapter,
24  Million Man March v. Cook*, 922 F.Supp. 1494
    (D.Colo. 1996) ......................................... 22
25

1                               **CITATION INDEX**

2   *Morse v. Frederick*, 551 U.S. 393 (2007) ................. 19

3

4   *National Socialist White People's Party v. Ringers*,
    473 F.2d 1010, 1014, n. 4 (4th Cir. 1973) ................  18

5

6   *O Centro Espirita Beneficiente v. Ashcroft*,
    389 F.3d 973, 975 (10th Cir. 2004) ......................   6

7

8   *Shero v. City of Grove, Oklahoma*,
    510 F.3d 1196 (10th Cir. 2007) ........................... 10

9

10  *Startzell v. City of Philadelphia*,
    533 F.3d 183 (3$^{d}$ Cir. 2008) .............................  11

11

12  *Tinker v. Des Moines*, 393 U.S. 503 (1969) ...............  8

13  *Utah License Beverage Association v. Leavitt*,
    256 F.3d 1061, 1076 (10th Cir. 2001) ..................... 21

14

15  *Wells v. City and County of Denver*,
    257 F.3d 1132, 1138-39, (10th Cir. 2001) ................  6

16

17  *Williams v. Wallace*, 240 F.Supp. 100
    (M.D.Ala. 1965) ........................................ 14

18

19  *Winter v. Natural Resources Defense Council, Inc.*,
    129 S.Ct. 365, 374 (2008) ...............................  5

20

21

22

23

24

25

1     **(Proceedings commence at 1:43 p.m.)**

2          **THE CLERK:**  All rise.

3     (Court enters.)

4          **THE CLERK:**  Court is now in session.

5          **THE COURT:**  Good afternoon.  Please be seated.

6          The Court has considered the pending motion and the

7     opposition provided by the University of Wyoming and issues the

8     following order:

9          The Supreme Court and the Tenth Circuit

10    Court of Appeals have instructed that this Court must apply a

11    four-prong test when evaluating whether a preliminary

12    injunction should issue.  Plaintiffs, as the moving party, bear

13    the burden of establishing:  First, a substantial likelihood of

14    a success on the merits; second, that they will suffer

15    irreparable harm in the absence of preliminary relief; third,

16    that the balance of equities tips in their favor; and, fourth,

17    that an injunction is in the public interest.  *Winter versus*

18    *Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374,

19    2008; *American Civil Liberties Union versus Johnson*, 194 F.3d

20    1149, 1155, Tenth Circuit 1999.

21         Where, as here, the scope of the requested preliminary

22    injunction is such that it would afford the movants all the

23    relief that might be recoverable at the conclusion of a full

24    trial on the merits, the movants face an even heavier burden

25    and must show that the four-part preliminary injunction

1 factors, quote, weigh heavily and compellingly in movant's

2 favor before such an injunction may be issued, close quote.

3 *O Centro Espirita Beneficiente versus Ashcroft*, 389 F.3d 973,

4 975, Tenth Circuit 2004.

5        The Supreme Court has articulated a three-step

6 framework to be used when analyzing restrictions on private

7 speech on government property.  *Cornelius versus NAACP Legal*

8 *Defense and Education Fund, Inc.*, 473 U.S. 788, 1985.  First,

9 the Court must determine whether the speech at issue is

10 protected by the First Amendment.  If so, the Court must then,

11 quote, identify the nature of the forum because the extent to

12 which the government may limit access depends on whether the

13 forum is public or non-public.  *Id.* at 797.

14        Third, the Court, quote, must assess whether the

15 justifications for exclusion from the relevant forum satisfy

16 the requisite standard, close quote.  The standard would

17 include whether a content-based restriction can survive strict

18 scrutiny, whether a content-neutral restriction is a valid

19 regulation of the time, place or manner of the speech or

20 whether a restriction in a non-public forum is reasonable.

21 *Wells versus City and County of Denver*, 257 F.3d 1132, 1138-39,

22 Tenth Circuit 2001.

23        The defendants concede that the speech at issue in

24 this case is protected under the First Amendment, and they

25 could make no credible argument to the contrary.  Defendants

1  argue that the question posed is a very narrow one and that

2  this Court should limit its forum analysis to the specific

3  venue requested by Ms. Lanker, that being the University of

4  Wyoming Sports Complex, also known as the "Multi-Purpose Gym."

5  But such an approach ignores convincing evidence before this

6  Court that suggests the University's real position with respect

7  to Mr. Ayers' proposed speaking engagement; namely, that he was

8  not welcome to speak anywhere on the University of Wyoming

9  campus.

10         Ms. Lanker testified that when she first contacted the

11  University of Wyoming athletic scheduling office, she was told

12  that the Multi-Purpose Gym was available on April 28 and would

13  require a rental fee in the range of $650 to $800.  When

14  Ms. Lanker called back to reserve the facility, she was told by

15  the individual in charge of scheduling that she would, quote,

16  have to make some calls first, close quote.

17         The next communication Ms. Lanker received was from

18  the University of Wyoming General Counsel Susan Weidel.

19  According to Ms. Lanker, Ms. Weidel informed her that, quote,

20  the University of Wyoming was not available as a venue for

21  Professor Ayers, close quote.

22         When Ms. Lanker asked follow-up questions regarding

23  the reason for the refusal, Ms. Weidel reiterated simply and

24  without elaboration that the University was not available,

25  according to the testimony of Ms. Lanker.

1          Although the defendants dispute plaintiffs' version of

2    the University's response, the Court need not even take

3    Ms. Lanker's word for it.  The substance of the telephone

4    conversation at issue was summarized in an email sent from

5    Ms. Weidel to Ms. Lanker later that day.  Ms. Weidel wrote:

6    Quote, pursuant to our telephone conversation, the University

7    of Wyoming will not be available as a venue for the event you

8    are hosting for Mr. William Ayers.  As I mentioned in our

9    telephone conversation, you may want to consider other large

10    venues, both public and private, in both Laramie and Cheyenne,

11    close quote.  *Plaintiffs' Exhibit 1*.

12          The Court believes that this restriction means exactly

13    what it says:  Mr. Ayers is prohibited from using a venue on

14    the University of Wyoming campus, period.  Any explanation now

15    offered that presumes to state otherwise ignores the

16    unambiguous meaning of the general counsel's message.

17          Further, in explaining the University's position,

18    defendant stated, quote, the University of Wyoming, here, has

19    not limited Ayers' speech because it disapproves of his

20    message.  The University's actions are in response to the

21    serious threats of violence which it received that are related

22    and directed to Ayers' speech.  Although undifferentiated fear

23    or apprehension of disturbance is not enough to overcome

24    First Amendment rights, citing to *Tinker versus Des Moines*, the

25    threats here show a specific intent to cause violence if Ayers

1   is allowed to speak on campus, close quote.  With this

2   statement, however, the Court is asked to reconcile a later

3   statement in which the defendants represent, quote, nothing

4   prohibits plaintiffs from speaking in a public forum such as

5   Prexy's Pasture, an open area in the middle of the university

6   campus, close quote.

7          This is somewhat conflicting with the testimony of

8   President Buchanan that Prexy's Pasture would presumably be

9   available as a forum for Mr. Ayers' speech.  The Court finds

10  the more recent retreat from the University's earlier position

11  both unpersuasive and pretextual.

12         Even focusing exclusively on the Multi-Purpose Gym as

13  the relevant forum, however, the restriction imposed does not

14  pass constitutional muster.  Defendants argue that the

15  Multi-Purpose Gym is a, quote, limited public forum, close

16  quote, as opposed to a, quote, designated public forum, close

17  quote.

18         Although the Court is skeptical that the historical

19  use of the Multi-Purpose Gym would support the University's

20  position, because the restriction imposed by defendants cannot

21  withstand even the more deferential standard applicable to a

22  limited public forum, it need not decide that issue.

23         The Tenth Circuit has explained the distinction

24  between the two types of fora as follows:  Quote, a designated

25  public forum is created when the government intentionally opens

1   a non-traditional public forum for public discourse.  The

2   government's action in excluding a member of a class to which a

3   designated forum is made generally available is subject to

4   strict scrutiny.  A limited public forum, on the other hand,

5   arises where the government allows selective access to some

6   speakers or some types of speech in a non-public forum but does

7   not open the property sufficiently to become a designated

8   public forum.  Any government restriction on speech in a

9   limited public forum must only be reasonable in light of the

10  purpose served by the forum and be viewpoint-neutral.

11        In a designated public forum, however, the government

12  may only impose content-neutral time, place and manner

13  restrictions that (a) serve a significant government interest;

14  (b) are narrowly tailored to advance that interest; and (c)

15  leave open ample alternative channels of communication, close

16  quote. *Shero versus City of Grove, Oklahoma*, 510 F.3d 1196,

17  Tenth Circuit 2007, internal citations omitted.

18        Plaintiffs argue that the defendants imposed an

19  identity- and content-based restriction on Mr. Ayers' ability

20  to speak on the University of Wyoming campus.  Such a

21  restriction, they argue, effectively gave the displeased public

22  a, quote, heckler's veto, close quote.  This Court agrees.

23        A heckler's veto is, by definition, quote, an

24  impermissible content-based restriction on speech where the

25  speech is prohibited due to an anticipated disorderly or

1  violent reaction of the audience, close quote.  *Startzell*

2  *versus City of Philadelphia*, 533 F.3d 183, Third Circuit 2008.

3       In *Forsyth County versus Nationalist Movement*, 505

4  U.S. 123, 134, 1992, the Supreme Court emphasized that, quote,

5  listeners' reaction to speech is not a content-neutral basis

6  for regulation, close quote.  In other words, the First

7  Amendment does not permit a heckler's veto.  *Center for*

8  *Bio-Ethical Reform, Inc. versus Los Angeles County Sheriff's*

9  *Department*, 533 F.3d 780, Ninth Circuit 2008; and *Frye versus*

10 *Kansas City Missouri Police Department*, 375 F.3d 785,

11 Eighth Circuit 2004, in which the Court stated, quote, the

12 prohibition of hecklers' vetoes is, in essence, the

13 First Amendment protection against the government effectuating

14 a complaining citizen's viewpoint discrimination, close quote.

15      The evidence in this case demonstrates the University

16 prohibited Mr. Ayers from speaking based upon an

17 undifferentiated fear or apprehension of disturbance on the

18 campus.  At least as demonstrated by the evidence offered by

19 the University, those fears were the result of, at best, veiled

20 and indirect threats or predictions.  Let's consider some of

21 that evidence.

22      Exhibit A:  An individual who identified himself by

23 name and gave his phone number and indicated that he was,

24 quote, bringing a group of friends on Monday to protest Bill

25 Ayers' visit to campus, close quote.

1       Where is the threat in that?  If he and other citizens

2   who are concerned want to assemble, where is the threat?

3       Exhibit B:  An individual called University staff a,

4   quote, effen moron, close quote, and said that we, University

5   of Wyoming, were all of a bunch of, quote, effen idiots, close

6   quote, for allowing Ayers to speak on campus and told

7   Mr. Ontiveroz, quote, once Bill Ayers gets done talking here,

8   send him to Rock Springs and we can take care of him, close

9   quote.  While it's certainly unlikely that the invitation to

10  come to Rock Springs was to attend a barbecue -- (audience

11  laughter) -- it is nevertheless a very vague threatening

12  statement at best.

13      Exhibit C:  Another email from an individual who

14  identified himself by name, and the University provided that

15  exhibit and even has the gentleman's email address; and it

16  states, quote, Bill Ayers is a scumbag, and you are bigger

17  assholes for inviting this terrorist to the UW facility.  I

18  laughed long and hard at his cancellation.  The best thing that

19  miserable SOB could do is drop dead.  For those of you that

20  invited this prick, I think you should eat a mouthful of

21  buckshot, close quote.

22      Not a pretty statement.  But then the author, however

23  profane, goes on to recognize the First Amendment.  He says,

24  quote, unfortunately Americans, paren, which you're not, close

25  paren, have to tolerate your socialist speech based on your

1   First Amendment rights.  That is also what affords me to call

2   out what ungrateful douchebags you are, close quote; ending,

3   quote, all the worst to you.  Mike, close quote.

4            Well, Mike was mightily exercised.  And he leaves us

5   in no doubt of his thoughts about Mr. Ayers.  But to read that

6   as a direct threat is patently ridiculous.

7            Then the testimony of certain witnesses:

8            Dean Kay Persichitte, the incident in the grocery

9   story wherein this individual never identified and never

10  reported to the police, at least not timely, said, quote, you

11  should be strung up, close quote, and that, quote, Ayers should

12  bomb you, close quote.

13           Dr. Howard Willson testified receiving 30 calls, one

14  of which was threatening in nature.  The speaker said she

15  estimated that the University would receive a couple of hundred

16  thousand calls.  Thirty calls.

17           Chief Stalder's testimony:  No threats against the

18  Laramie Civic Center.  He was satisfied he could provide

19  adequate security without detailing the security measures

20  taken; that he frequently cooperated with the University of

21  Wyoming Police; that there had been no discussion with the

22  University Police regarding coordination of Mr. Ayers' pending

23  speech.  And I'm referring to the earlier April 5th intended

24  speech before he was uninvited.  And the evidence is clear that

25  neither the president nor anyone else in the administration

1  even consulted with the University of Wyoming law enforcement

2  agency, the police department, about security concerns.  If it

3  happened, it's not in the record before the Court.  Few threats

4  were relayed to any law enforcement agency.

5          And even if the Court were to take the University's

6  position as to the limitations of the Multi-Purpose Gym at face

7  value, apparently the decision whether to allow or disallow a

8  speech-related use rested entirely within the unfettered

9  discretion of President Buchanan, there being no written

10  policies about the terms and circumstances by which this

11  building could be used.

12          In contrast to the evidence of the undifferentiated,

13  general and veiled threats at issue in this case stands a long

14  line of cases presenting much more particularized threats of

15  violence and violent confrontation and sometimes, sadly, even a

16  recent history of actual violence.  This Court touched on some

17  of these cases yesterday, and I add briefly to the discussion a

18  few more today.

19          In March of 1965, Judge Frank Johnson of the

20  United States District Court for the Middle District of Alabama

21  was asked to enjoin the State of Alabama from interfering with

22  the march of civil rights leaders from Selma to Montgomery,

23  Alabama.  Judge Johnson's decision in the case of *Williams*

24  *versus Wallace*, 240 F.Supp. 100, Middle District of Alabama

25  1965, was issued just 12 days after what's now known in history

1  as "Bloody Sunday."  On Bloody Sunday, March 7, 1965, 600 or so

2  civil rights marchers headed east out of Selma on U.S. Route

3  80.  They got only as far as the notorious Edmond Pettus

4  Bridge, six blocks away, where state and local lawmen, acting

5  under the color of law, attacked them with billy clubs and tear

6  gas and drove them back into Selma.

7       At a time when the American south was a virtual powder

8  keg of racial hostility and social unrest, arguments were made

9  to Judge Johnson that violence would likely be carried out

10  against the marchers, a fact all too well known to

11  Judge Johnson based on the events of March 7.

12       Nonetheless, Judge Johnson rejected the State of

13  Alabama's position that threats of violence from those who

14  opposed the exercise of free speech can serve as a sufficient

15  justification to cancel constitutional dictates.  Judge Johnson

16  wrote:  The State's contention that there is some hostility to

17  this march will not justify its denial.  Nor will the threat of

18  violence constitute an excuse for its denial.  *Id.* at page 109,

19  citations omitted.

20       Twenty-five years later, a district judge in the

21  Middle District of Tennessee was asked to pass on the

22  constitutionality of a city ordinance that allowed the city to

23  deny a parade permit to, quote, any individual or group based

24  on anticipation of violence being instigated or riots incited

25  by such individual or group under circumstances when, at the

1  time of the application for the permit, there is a clear and

2  present danger of imminent lawless action, close quote.

3         The plaintiffs in that case were the Knights of the

4  Ku Klux Klan who intended to assemble and parade through the

5  City of Pulaski, Tennessee, on January 13, 1990, in protest of

6  the Martin Luther King Jr. holiday.  It is reported more fully

7  in the case of the *KKK versus Martin Luther King Jr.*

8  *Worshippers, et al.*, 735 F.Supp. 745, Middle District of

9  Tennessee 1990.

10         The Court in that case found the above-quoted

11  provision unconstitutional because it allowed, quote, too much

12  latitude for discriminatory denial of the First Amendment right

13  to free speech, close quote.  *Id.* at 749.

14         The Court compared the ordinance at issue to a similar

15  ordinance discussed by the Supreme Court in *Hague versus CIO*,

16  307 U.S. 496, 516, 1939.

17         The *Hague* court held that the ordinance was

18  unconstitutional since it could, quote, be made the instrument

19  of arbitrary suppression of free expression of views on

20  national affairs, for the prohibition of all speaking will

21  undoubtedly prevent such eventualities such as riots,

22  disturbances or disorderly assemblages.  But uncontrolled

23  official suppression of the privilege cannot be made a

24  substitute for the duty to maintain order in connection with

25  the exercise of the right, close quote.

1          And referring to Judge Johnson's decision in *Williams*
2  *versus Wallace*, the district court concluded, quote, as the
3  threat of violence could not be used to abridge the
4  First Amendment rights of the civil rights marchers in 1965, it
5  may not be used to abridge the rights of the Ku Klux Klan in
6  1990.  The duty of Pulaski is not to suppress the speech of the
7  Ku Klux Klan but to maintain order in connection with the
8  exercise of the right, close quote.  *Id.* at 750.

9          Similarly, in *Beckerman versus City of Tupelo*, 664
10  F.2d 502, of the former Fifth Circuit Court 1981, the Court
11  addressed the constitutionality of an ordinance that, in part,
12  authorized the chief of police to deny a parade permit if he
13  determined that the issuance would, quote, provoke disorderly
14  conduct, close quote.

15          In *Beckerman*, the plaintiff, a group known as the
16  International Committee Against Racism, challenged the
17  ordinance as an impermissible prior restraint on
18  First Amendment freedoms.

19          With respect to the above-referenced portion of the
20  ordinance and drawing on Supreme Court precedent, the Fifth
21  Circuit held:  Quote, this provision falls as an impermissible
22  prior restraint upon free speech because it is not narrowly
23  drawn to relate to health, safety and welfare interests, but
24  instead it sanctions the denial of a permit on the basis of the
25  so-called "hecklers' veto."  In authorizing the denial of a

1  permit because the licensor has determined the activity will

2  provoke disorderly conduct in others, the state treads on thin

3  ice.   There is a host of Supreme Court cases dealing with the

4  issue of the "hecklers' veto."  In almost every instance, it is

5  not acceptable for the state to prevent a speaker from

6  exercising his constitutional rights because of the reaction to

7  him by others, close quote.

8         The Court also stressed:  A state may not unduly

9  suppress free communication of views under the guise of

10  conserving desirable conditions.  It is firmly established that

11  under our Constitution the public expression of ideas may not

12  be prohibited merely because the ideas themselves are offensive

13  to some of their hearers.  *Id.* at 509 and 510.

14         See also *National Socialist White People's Party*

15  *versus Ringers*, 473 F.2d 1010, 1014, Note 4, Fourth Circuit

16  1973, rejecting arguments that the use of facilities could be

17  denied on the grounds that violence and damage to the facility

18  would result, and citing Supreme Court and other precedent for

19  the proposition that, quote, even if the record showed some

20  history of violence attendant upon the Party's meetings or some

21  threat of violence by hostile spectators, it would not

22  constitute a proper basis for restraining the Party's otherwise

23  legal First Amendment activity, close quote.

24         Yesterday I asked President Buchanan whether he

25  understood that mere threats of violence standing alone could

1  not serve as a justification for the restriction of speech.

2  Devoid of context, the question arguably, unquestionably

3  involved a simplification of the law.  For example, the Court

4  recognizes the clear line of established precedent in areas

5  neither urged by the defendants nor relevant based on the facts

6  of this case.  For example, *Cantwell versus Connecticut*, 310

7  U.S. 296, 308, 1940:  Quote, when a clear and present danger of

8  riot, disorder, interference with traffic upon the public

9  streets or other immediate threat to public safety, peace or

10 order appears, the power of the state to prevent or punish is

11 obvious, close quote.

12        Both this question and another posed to the

13 defendants' counsel during closing arguments invited defendants

14 to provide the Court with the legal authority that best

15 supports the position they are advocating in this court.  In

16 response, Mr. Rice cited the Court to two Supreme Court cases:

17 *Morse v. Frederick*, 551 U.S. 393, 2007; and the seminal

18 symbolic speech case of *Tinker versus Des Moines*, 393 U.S. 503,

19 1969.

20        The first case, *Morse versus Frederick*, is, quite

21 simply, distinguishable from the facts of the case now before

22 this Court.  As best the Court can discern, the University has

23 simply plucked an isolated statement from that opinion, that

24 statement being, quote, the danger in this case is far more

25 serious and palpable, close quote, assuming that its repetition

1  in any context will somehow make it so.  With respect to the

2  second case, *Tinker versus Des Moines*, in light of the Court's

3  assessment of the evidence in this case, the Court is left

4  guessing as to how this authority advances the University's

5  position.

6          In fact, consider the words of Justice Fortas, writing

7  for the majority in 1969.  His words are as relevant and

8  powerful today as they were more than 40 years ago.  He said,

9  quote, in our system, undifferentiated fear or apprehension of

10 disturbance is not enough to overcome the right to freedom of

11 expression.  Any departure from absolute regimentation may

12 cause trouble.  Any variation from the majority's opinion may

13 inspire fear.  Any word spoken, in class, in the lunchroom or

14 on the campus, that deviates from the views of another person

15 may start an argument or cause a disturbance.  But our

16 Constitution says we must take this risk, and our history says

17 that it is this sort of hazardous freedom, this kind of

18 openness, that is the basis of our national strength and of the

19 independence and vigor of Americans who grow up and live in

20 this relatively permissive, often disputatious, society, close

21 quote.  *Id.*, 393 U.S. at 508 and 509.

22          For the reasons just discussed, this Court finds that

23 the plaintiffs have satisfied their burden of establishing a

24 substantial likelihood of success on the merits of their

25 First Amendment claim.

1           Having determined that there is a substantial

2    likelihood that plaintiffs will succeed on the merits of their

3    case, the Court must next address the remaining three

4    preliminary injunction factors.  As defendants point out, this

5    first factor may play a decisive role; and once a substantial

6    likelihood of success on the merits, the other conditions of

7    injunctive relief will also be satisfied.

8           First, plaintiffs have established that they will

9    suffer irreparable injury if the preliminary injunction is not

10   granted.  As the Supreme Court has stated, quote, the loss of

11   First Amendment freedoms, for even minimal periods of time,

12   unquestionably constitutes irreparable injury, close quote.

13   *Elrod versus Burns*, 427 U.S. 347, 373, 1976.

14          Accordingly, where, quote, First Amendment rights are

15   infringed, irreparable harm is presumed, close quote.

16   *Community Communications Company, Inc. versus City of Boulder*,

17   660 F.2d 1370, 1376, Tenth Circuit 1981.  See also *Utah License*

18   *Beverage Association versus Leavitt*, 256 F.3d 1061, 1076,

19   Tenth Circuit 2001.

20          Similarly, with respect to the balance of harms, the

21   threatened injury to plaintiffs' constitutionally protected

22   speech outweighs any damage to defendants caused by a

23   preliminary injunction that requires them to conform their

24   conduct to the requirements of the Constitution.  See *Johnson*,

25   194 F.3d at 1163.

1              Finally, with respect to the public interest, quote,

2    it is axiomatic that the preservation of First Amendment rights

3    serves everyone's interest, close quote.  *Local Organizing*

4    *Committee, Denver Chapter, Million Man March versus Cook*, 922

5    F.Supp. 1494, District of Colorado 1996.

6              In conclusion, the Court suspects -- and indeed the

7    evidence suggests -- that the public's response to

8    Professor Ayers' visit and planned speech on the University of

9    Wyoming campus was fueled largely by the negative recollection

10   of his alleged acts, errors and omissions of more than 40 years

11   ago.

12             There was, of course, no evidence received in this

13   hearing on the detailed matters of Mr. Ayers' past, but this

14   Court is of an age to remember the group of which he was a

15   founding member.  When the Weather Underground was bombing the

16   Capitol of the United States in 1971, I served in the uniform

17   of my country.  Like many of my fellow veterans of that era,

18   even to this day, when I hear the name of that organization, I

19   can scarcely swallow the bile of my contempt for it.

20             The fact remains Mr. Ayers is a citizen of the

21   United States who wishes to speak.  He need not offer any more

22   justification than that.  The controversy surrounding the past

23   life of Professor Ayers and the widely held public perception

24   of his past conduct cannot serve as a justification to defrock

25   him of the guarantees of the First Amendment.

1          The Bill of Rights is a document for all seasons.  We

2     don't just display it when the weather is fair and put it away

3     when the storm is tempest.  To be a free people, we must have

4     the courage to exercise our constitutional rights.  To be a

5     prudent people, we have to protect the rights of others,

6     recognizing that that is the best guarantor of our own rights.

7          For the reasons just set forth on the record by this

8     Court, pursuant to Federal Rules of Civil Procedure 65(a)(1),

9     defendants are enjoined from prohibiting Professor Ayers from

10    speaking at the University of Wyoming Sports Complex, also

11    referred to as the "Multi-Purpose Gym," on Wednesday, April 28,

12    2010.

13         Further, the University of Wyoming must take all

14    reasonable steps, consistent with this order, to coordinate

15    with the plaintiffs in scheduling Professor Ayers' on-campus

16    address and to take all prudent steps to maintain order and to

17    provide for the safety of participants and spectators.  In this

18    regard, the Court takes notice of the University of Wyoming's

19    Central Scheduling Policy and the fact that critical provisions

20    contained therein appear to be discretionary.

21         Given the constraints of time, the University is

22    admonished that it cannot place unreasonable contractual

23    demands on the plaintiffs which would frustrate the

24    implementation of this order.

25         It is so ordered.

 1           The court clerk is directed to obtain a transcript of

 2   the Court's ruling from the court reporter.  It is incorporated

 3   in a one-page order which will issue from the courthouse today.

 4           Do I need to hear from counsel on any matter?

 5           **MR. LANE:**  Nothing from plaintiff at this time,

 6   Your Honor.  Thank you very much.

 7      (Feedback from the Denver microphone.)

 8           **MR. RICE:**  Nothing from the defendant, Your Honor.

 9           **THE COURT:**  Will you try again, counsel, please.

10      (Feedback from the Denver microphone.)

11           **THE REPORTER:**  I got it.

12           **THE COURT:**  You got it?

13           **THE REPORTER:**  Yes, sir.

14           **THE COURT:**  All right.  Thank you.  Court is

15   adjourned.

16           **THE CLERK:**  All rise.

17      (Court retires to chambers.)

18           **THE CLERK:**  Court will stand in recess.

19           **(The proceedings conclude at 2:25 p.m.)**

20

21

22

23

24

25

1                    **REPORTER CERTIFICATE**

2            I, JAMIE L. HENDRICH, Official Federal Court Reporter

3    in the United States District Court for the District of

4    Wyoming, certify that the foregoing is a correct transcript

5    from the record of proceedings in the above-entitled matter.

6    ___4.29.10_____                    _____/S/_____
          **Date**                     **JAMIE L. HENDRICH, CSR-RPR-CRR**
7                                       Official Federal Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A**

ability 10:19
above-entitled 25:5
above-quoted 16:10
above-referenced 17:19
abridge 17:3,5
absence 5:15
absolute 20:11
acceptable 18:5
access 6:12 10:5
acting 15:4
action 10:2 16:2
actions 8:20
activity 18:1,23
acts 22:10
actual 14:16
add 14:17
address 12:15 21:3 23:16
addressed 17:11
adequate 13:19
adjourned 24:15
administration 13:25
admonished 23:22
advance 10:14
advances 20:4
advocating 19:15
affairs 16:20
afford 5:22
affords 13:1
afternoon 5:5
age 22:14
agency 14:2,4
ago 20:8 22:11
agrees 10:22
al 3:21 16:8
Alabama 14:20,21,23,24
Alabama's 15:13
alleged 22:10
allow 14:7
allowed 9:1 15:22 16:11
allowing 12:6
allows 10:5
alternative 10:15
Amendment 6:10,24 8:24
   11:7,13 12:23 13:1
   16:12 17:4,18 18:23
   20:25 21:11,14 22:2,25
American 3:2 5:19 15:7
Americans 12:24 20:19
ample 10:15
analysis 7:2
analyzing 6:6
Angeles 3:7 11:8
anticipated 10:25
anticipation 15:24
apparently 14:7
Appeals 5:10
appear 23:20
APPEARANCES 1:16
   2:1
Appearing 1:17

appears 19:10
applicable 9:21
application 16:1
apply 5:10
apprehension 8:23 11:17
   20:9
approach 7:5
April 1:5 7:12 13:23
   23:11
arbitrary 16:19
area 9:5
areas 19:4
arguably 19:2
argue 7:1 9:14 10:18,21
argument 6:25 20:15
arguments 15:8 18:16
   19:13
arises 10:5
articulated 6:5
Ashcroft 4:5 6:3
asked 7:22 9:2 14:21
   15:21 18:24
assemblages 16:22
assemble 12:2 16:4
assess 6:14
assessment 20:3
assholes 12:17
Association 4:13 21:18
assuming 19:25
athletic 7:11
attacked 15:5
attend 12:10
attendant 18:20
audience 11:1 12:10
author 12:22
authority 19:14 20:4
authorized 17:12
authorizing 17:25
available 7:12,20,24 8:7
   9:9 10:3
Avenue 1:22
axiomatic 22:2
Ayers 1:3 7:7,21 8:8,13
   8:19,22,25 9:9 10:19
   11:16,25 12:6,7,16 13:5
   13:11,22 22:8,13,20,23
   23:9,15

**B**

b 10:14 12:3
back 7:14 15:6
balance 5:16 21:20
barbecue 12:10
based 11:16 12:25 15:11
   15:23 19:5
basis 11:5 17:24 18:22
   20:18
bear 5:12
Beckerman 3:4 17:9,15
believes 8:12
Belleview 1:22

Beneficiente 4:5 6:3
best 11:19 12:12,18 19:14
   19:22 23:6
Beverage 4:13 21:18
bigger 12:16
bile 22:19
Bill 11:24 12:7,16 23:1
billy 15:5
Bio-Ethical 3:7 11:8
blocks 15:4
Bloody 15:1,1
bomb 13:12
bombing 22:15
Boulder 3:10 21:16
Bridge 15:4
briefly 14:17
bringing 11:24
Broadway 2:3
Buchanan 1:7 9:8 14:9
   18:24
buckshot 12:21
building 14:11
bunch 12:5
burden 5:13,24 20:23
Burns 3:14 21:13

**C**

c 10:14 12:3
call 13:1
called 7:14 12:3
calls 7:16 13:13,16,16
campus 7:9 8:14 9:1,6
   10:20 11:18,25 12:6
   20:14 22:9
cancel 15:15
cancellation 12:18
Cantwell 3:6 19:6
capacity 1:7
Capitol 22:16
care 12:8
carried 15:9
case 1:4 6:24 11:15 14:13
   14:23 16:3,7,10 19:6,18
   19:20,21,24 20:2,3 21:3
cases 14:14,17 18:3 19:16
Casper 1:6 2:8
cause 8:25 20:12,15
caused 21:22
Center 3:7 11:7 13:18
Central 23:19
Centro 4:5 6:3
certain 13:7
certainly 12:9
CERTIFICATE 25:1
certify 25:4
challenged 17:16
chambers 24:17
Champa 1:20
channels 10:15
Chapter 3:23 22:4
charge 7:15

Cheyenne 8:10
chief 1:14 13:17 17:12
CIO 3:20 16:15
Cir 3:2,4,8,11,18 4:4,6,8
   4:10,13,15
Circuit 5:9,20 6:4,22 9:23
   10:17 11:2,9,11 17:10
   17:21 18:15 21:17,19
circumstances 14:10
   15:25
CITATION 3:1 4:1
citations 10:17 15:19
cited 19:16
citing 8:24 18:18
citizen 22:20
citizens 12:1
citizen's 11:14
city 1:9 3:4,10,18 4:7,9,15
   6:21 10:16 11:2,10
   15:22,22 16:5 17:9
   21:16
Civic 13:18
civil 3:2 5:19 14:22 15:2
   17:4 23:8
claim 20:25
class 10:2 20:13
clear 13:24 16:1 19:4,7
clerk 5:2,4 24:1,16,18
close 6:2,16 7:16,21 8:11
   9:1,6,15,16 10:15,22
   11:1,6,14,25 12:4,5,8,21
   12:24 13:2,3,11,12 16:2
   16:13,25 17:8,14 18:7
   18:23 19:11,25 20:20
   21:12,15 22:3
closing 19:13
clubs 15:5
color 15:5
Colorado 1:17,21,23 2:4
   22:5
come 12:10
commence 5:1
Committee 3:23 17:16
   22:4
communication 7:17
   10:15 18:9
Communications 3:10
   21:16
Community 3:10 21:16
Company 3:10 21:16
compared 16:14
compellingly 6:1
complaining 11:14
Complex 7:4 23:10
concede 6:23
concerned 12:2
concerns 14:2
conclude 24:19
concluded 17:2
conclusion 5:23 22:6
conditions 18:10 21:6

**conduct** 17:14 18:2 21:24
  22:24
**conflicting** 9:7
**conform** 21:23
**confrontation** 14:15
**Connecticut** 3:6 19:6
**connection** 16:24 17:7
**conserving** 18:10
**consider** 8:9 11:20 20:6
**considered** 5:6
**consistent** 23:14
**constitute** 15:18 18:22
**constitutes** 21:12
**Constitution** 18:11 20:16
  21:24
**constitutional** 9:14 15:15
  18:6 23:4
**constitutionality** 15:22
  17:11
**constitutionally** 21:21
**constraints** 23:21
**consulted** 14:1
**contacted** 7:10
**contained** 23:20
**contempt** 22:19
**contention** 15:16
**content-based** 6:17 10:19
  10:24
**content-neutral** 6:18
  10:12 11:5
**context** 19:2 20:1
**contractual** 23:22
**contrary** 6:25
**contrast** 14:12
**controversy** 22:22
**conversation** 8:4,6,9
**convincing** 7:5
**Cook** 3:24 22:4
**cooperated** 13:20
**coordinate** 23:14
**coordination** 13:22
**Cornelius** 3:12 6:7
**correct** 25:4
**Council** 4:19 5:18
**counsel** 1:17 7:18 19:13
  24:4,9
**counsel's** 8:16
**country** 22:17
**County** 3:8,16 4:15 6:21
  11:3,8
**couple** 13:15
**courage** 23:4
**course** 22:12
**court** 1:1 2:6 5:3,4,5,6,9
  5:10,10 6:5,9,10,14 7:2
  7:6 8:2,12 9:2,9,18
  10:22 11:4,11 14:3,5,16
  14:20 16:10,14,15,17
  17:2,10,10,20 18:3,8,18
  19:3,14,15,16,16,22,22
  20:3,22 21:3,10 22:6,14

23:8,18 24:1,2,9,12,14
  24:14,17,18 25:2,3,7
**courthouse** 2:7 24:3
**Court's** 20:2 24:2
**created** 9:25
**credible** 6:25
**critical** 23:19
**CSR-RPR-CRR** 2:6 25:6

---

**D**

**damage** 18:17 21:22
**danger** 16:2 19:7,24
**Darold** 1:18
**Date** 25:6
**David** 1:18,22
**day** 8:5 22:18
**days** 14:25
**dead** 12:19
**dealing** 18:3
**Dean** 13:8
**decide** 9:22
**decision** 14:7,23 17:1
**decisive** 21:5
**defendant** 8:18 24:8
**defendants** 1:8 2:2 6:23
  6:25 8:1 9:3,14,20 10:18
  19:5,13,13 21:4,22 23:9
**Defense** 3:12 4:19 5:18
  6:8
**deferential** 9:21
**definition** 10:23
**defrock** 22:24
**demands** 23:23
**demonstrated** 11:18
**demonstrates** 11:15
**denial** 15:17,18 16:12
  17:24,25
**denied** 18:17
**Denver** 1:17,21 2:4 3:23
  4:15 6:21 22:4 24:7,10
**deny** 15:23 17:12
**department** 3:8,18 11:9
  11:10 14:2
**departure** 20:11
**depends** 6:12
**Des** 4:11 8:24 19:18 20:2
**designated** 9:16,24 10:3,7
  10:11
**desirable** 18:10
**detailed** 22:13
**detailing** 13:19
**determine** 6:9
**determined** 17:13 18:1
  21:1
**deviates** 20:14
**Devoid** 19:2
**dictates** 15:15
**direct** 13:6
**directed** 8:22 24:1
**disallow** 14:7
**disapproves** 8:19

**discern** 19:22
**discourse** 10:1
**discretion** 14:9
**discretionary** 23:20
**discrimination** 11:14
**discriminatory** 16:12
**discussed** 16:15 20:22
**discussion** 13:21 14:17
**disorder** 19:8
**disorderly** 10:25 16:22
  17:13 18:2
**display** 23:2
**displeased** 10:21
**disputatious** 20:20
**dispute** 8:1
**distinction** 9:23
**distinguishable** 19:21
**district** 1:1,1,14 2:7 14:20
  14:20,24 15:20,21 16:8
  17:2 22:5 25:3,3
**disturbance** 8:23 11:17
  20:10,15
**disturbances** 16:22
**document** 23:1
**don't** 23:2
**doubt** 13:5
**douchebags** 13:2
**DOWNES** 1:13
**Dr** 13:13
**drawing** 17:20
**drawn** 17:23
**drop** 12:19
**drove** 15:6
**due** 10:25
**duty** 16:24 17:6
**D.Colo** 3:24

---

**E**

**earlier** 9:10 13:23
**east** 1:22 15:2
**eat** 12:20
**Edmond** 15:3
**Education** 3:13 6:8
**effectively** 10:21
**effectuating** 11:13
**effen** 12:4,5
**Eighth** 11:11
**elaboration** 7:24
**Elrod** 3:14 21:13
**email** 8:4 12:13,15
**emphasized** 11:4
**enforcement** 14:1,4
**engagement** 7:7
**Englewood** 1:23
**enjoin** 14:21
**enjoined** 23:9
**enters** 5:3
**entirely** 14:8
**equities** 5:16
**era** 22:17
**errors** 22:10

**Espirita** 4:5 6:3
**essence** 11:12
**established** 18:10 19:4
  21:8
**establishing** 5:13 20:23
**estimated** 13:15
**et** 3:21 16:8
**evaluating** 5:11
**event** 8:7
**events** 15:11
**eventualities** 16:21
**everyone's** 22:3
**evidence** 7:5 11:15,18,21
  13:24 14:12 20:3 22:7
  22:12
**exactly** 8:12
**example** 19:3,6
**excluding** 10:2
**exclusion** 6:15
**exclusively** 9:12
**excuse** 15:18
**exercise** 15:14 16:25 17:8
  23:4
**exercised** 13:4
**exercising** 18:6
**exhibit** 8:11 11:22 12:3,13
  12:15
**explained** 9:23
**explaining** 8:17
**explanation** 8:14
**expression** 16:19 18:11
  20:11
**extent** 6:11

---

**F**

**F** 1:13
**face** 5:24 14:6
**facilities** 18:16
**facility** 7:14 12:17 18:17
**fact** 15:10 20:6 22:20
  23:19
**factor** 21:5
**factors** 6:1 21:4
**facts** 19:5,21
**fair** 23:2
**falls** 17:21
**far** 15:3 19:24
**favor** 5:16 6:2
**fear** 8:22 11:17 20:9,13
**fears** 11:19
**Federal** 2:6 23:8 25:2,7
**fee** 7:13
**Feedback** 24:7,10
**fellow** 22:17
**Fellows** 1:20
**Fifth** 17:10,20
**Finally** 22:1
**finds** 9:9 20:22
**firmly** 18:10
**first** 5:13 6:8,10,24 7:10
  7:16 8:24 11:6,13 12:23

13:1 16:12 17:4,18
    18:23 19:20 20:25 21:5
    21:8,11,14 22:2,25
**focusing** 9:12
**following** 5:8
**follows** 9:24
**follow-up** 7:22
**fora** 9:24
**foregoing** 25:4
**former** 3:4 17:10
**Forsyth** 3:16 11:3
**Fortas** 20:6
**forth** 23:7
**forum** 6:11,13,15,20 7:2
    9:4,9,13,15,16,22,25
    10:1,3,4,6,8,9,10,11
**found** 16:10
**founding** 22:15
**fourth** 5:16 18:15
**four-part** 5:25
**four-prong** 5:11
**framework** 6:6
**Frank** 14:19
**Frederick** 4:2 19:17,20
**free** 15:14 16:13,19 17:22
    18:9 23:3
**freedom** 20:10,17
**freedoms** 17:18 21:11
**frequently** 13:20
**friends** 11:24
**frustrate** 23:23
**Frye** 3:18 11:9
**fueled** 22:9
**full** 5:23
**fully** 16:6
**Fund** 3:13 6:8
**Further** 8:17 23:13
**F.Supp** 3:22,24 4:17
    14:24 16:8 22:5
**F.2d** 3:4,10 4:4 17:10
    18:15 21:17
**F.3d** 3:2,8,18 4:6,8,10,13
    4:15 5:19 6:3,21 10:16
    11:2,9,10 21:18,25

**G**

**gas** 15:6
**general** 7:18 8:16 14:13
**generally** 10:3
**gentleman's** 12:15
**Given** 23:21
**goes** 12:23
**GOLDFARB** 2:3
**Good** 5:5
**government** 6:7,12 9:25
    10:5,8,11,13 11:13
**government's** 10:2
**granted** 21:10
**grocery** 13:8
**grounds** 18:17
**group** 11:24 15:23,25

17:15 22:14
**Grove** 4:7 10:16
**grow** 20:19
**guarantees** 22:25
**guarantor** 23:6
**guessing** 20:4
**guise** 18:9
**Gym** 7:4,12 9:12,15,19
    14:6 23:11

**H**

**Hague** 3:20 16:15,17
**Hall** 1:20
**hand** 10:4
**happened** 14:3
**hard** 12:18
**harm** 5:15 21:15
**harms** 21:20
**hazardous** 20:17
**headed** 15:2
**health** 17:23
**hear** 22:18 24:4
**hearers** 18:13
**hearing** 22:13
**heavier** 5:24
**heavily** 6:1
**hecklers** 11:12 17:25 18:4
**heckler's** 10:22,23 11:7
**held** 16:17 17:21 22:23
**Hendrich** 2:6 25:2,6
**historical** 9:18
**history** 14:16,25 18:20
    20:16
**holiday** 16:6
**Honor** 24:6,8
**HONORABLE** 1:13
**host** 18:3
**hostile** 18:21
**hostility** 15:8,16
**hosting** 8:8
**Howard** 13:13
**hundred** 13:15

**I**

**ice** 18:3
**ideas** 18:11,12
**identified** 11:22 12:14
    13:9
**identify** 6:11
**identity** 10:19
**idiots** 12:5
**ignores** 7:5 8:15
**immediate** 19:9
**imminent** 16:2
**impermissible** 10:24
    17:17,21
**implementation** 23:24
**impose** 10:12
**imposed** 9:13,20 10:18
**incident** 13:8
**incited** 15:24

**include** 6:17
**incorporated** 24:2
**independence** 20:19
**INDEX** 3:1 4:1
**indicated** 11:23
**indirect** 11:20
**individual** 7:15 11:22
    12:3,13 13:9 15:23,25
**informed** 7:19
**infringed** 21:15
**injunction** 1:13 5:12,17
    5:22,25 6:2 21:4,9,23
**injunctive** 21:7
**injury** 21:9,12,21
**inspire** 20:13
**instance** 18:4
**instigated** 15:24
**instructed** 5:10
**instrument** 16:18
**intended** 13:23 16:4
**intent** 8:25
**intentionally** 9:25
**interest** 5:17 10:13,14
    22:1,3
**interests** 17:23
**interference** 19:8
**interfering** 14:21
**internal** 10:17
**International** 17:16
**Intervenor** 1:10
**invitation** 12:9
**invited** 12:20 19:13
**inviting** 12:17
**involved** 19:3
**irreparable** 5:15 21:9,12
    21:15
**isolated** 19:23
**issuance** 17:13
**issue** 5:12 6:9,23 8:4 9:22
    14:13 16:14 18:4 24:3
**issued** 6:2 14:25
**issues** 5:7
**it's** 12:9 14:3
**I'm** 13:23

**J**

**Jamie** 2:6 25:2,6
**January** 16:5
**Johnson** 3:2 5:19 14:19
    15:9,11,12,15 21:24
**Johnson's** 14:23 17:1
**Jr** 3:21 16:6,7
**judge** 1:14 14:19,23 15:9
    15:11,12,15,20 17:1
**Justice** 20:6
**justification** 15:15 19:1
    22:22,24
**justifications** 6:15
**justify** 15:17

**K**

**Kansas** 3:18 11:10
**Kay** 13:8
**keg** 15:8
**Killmer** 1:18,19
**kind** 20:17
**King** 3:21 16:6,7
**KKK** 3:21 16:7
**Klan** 16:4 17:5,7
**Klux** 16:4 17:5,7
**Knights** 16:3
**known** 1:7 7:4 14:25
    15:10 17:15
**Kovaci** 2:2
**Ku** 16:4 17:5,7

**L**

**L** 2:6 25:2,6
**Lane** 1:18,19 24:5
**Lanker** 1:3 7:3,10,14,17
    7:19,22,25 8:5
**Lanker's** 8:3
**Laramie** 1:9 8:10 13:18
**large** 8:9
**largely** 22:9
**latitude** 16:12
**laughed** 12:18
**laughter** 12:11
**law** 14:1,4 15:5 19:3
**lawless** 16:2
**lawmen** 15:4
**leaders** 14:22
**leave** 10:15
**leaves** 13:4
**Leavitt** 4:13 21:18
**left** 20:3
**legal** 3:12 6:7 18:23 19:14
**Let's** 11:20
**Liberties** 3:2 5:19
**License** 4:13 21:17
**licensor** 18:1
**life** 22:23
**light** 10:9 20:2
**likelihood** 5:13 20:24 21:2
    21:6
**limit** 6:12 7:2
**limitations** 14:6
**limited** 8:19 9:15,22 10:4
    10:9
**Lindsey** 1:22
**line** 14:14 19:4
**listeners** 11:5
**live** 20:19
**local** 3:23 15:4 22:3
**long** 12:18 14:13
**Los** 3:7 11:8
**loss** 21:10
**lunchroom** 20:13
**Luther** 3:21 16:6,7

**M**

**maintain** 16:24 17:7

23:16
**majority** 20:7
**majority's** 20:12
**Man** 3:24 22:4
**manner** 6:19 10:12
**march** 3:24 14:19,22 15:1
15:11,17 22:4
**marchers** 15:2,10 17:4
**Martin** 3:21 16:6,7
**matter** 24:4 25:5
**matters** 22:13
**meaning** 8:16
**means** 8:12
**measures** 13:19
**meetings** 18:20
**MEGHAN** 1:3
**member** 10:2 22:15
**mentioned** 8:8
**mere** 18:25
**merely** 18:12
**merits** 5:14,24 20:24 21:2
21:6
**message** 8:16,20
**Michael** 1:22
**microphone** 24:7,10
**middle** 9:5 14:20,24 15:21
16:8
**mightily** 13:4
**Mike** 13:3,4
**Million** 3:24 22:4
**minimal** 21:11
**miserable** 12:19
**Missouri** 3:18 11:10
**Mohamedbhai** 1:19
**Moines** 4:11 8:24 19:18
20:2
**Monday** 11:24
**Monica** 2:2
**Montgomery** 14:22
**moron** 12:4
**Morse** 4:2 19:17,20
**motion** 1:13 5:6
**mouthful** 12:20
**movants** 5:22,24
**movant's** 6:1
**Movement** 3:16 11:3
**moving** 5:12
**Multi-Purpose** 7:4,12
9:12,15,19 14:6 23:11
**muster** 9:14
**M.D.Ala** 4:17
**M.D.Tenn** 3:22

**N**

**n** 2:2 4:4
**NAACP** 3:12 6:7
**name** 11:23 12:14 22:18
**narrow** 7:1
**narrowly** 10:14 17:22
**national** 4:3 16:20 18:14
20:18

**Nationalist** 3:16 11:3
**Natural** 4:19 5:18
**nature** 6:11 13:14
**need** 8:2 9:22 22:21 24:4
**negative** 22:9
**neither** 19:2
**never** 13:9,9
**nevertheless** 12:11
**NEW  MAN** 1:19
**Ninth** 11:9
**non-public** 6:13,20 10:6
**non-traditional** 10:1
**Note** 18:15
**notice** 23:18
**notorious** 15:3
**number** 11:23

**O**

**O** 4:5 6:3
**obtain** 24:1
**obvious** 19:11
**Odd** 1:20
**offensive** 18:12
**offer** 22:21
**offered** 8:15 11:18
**office** 7:11
**official** 1:7 2:6 16:23 25:2
25:7
**Oklahoma** 4:7 10:16
**omissions** 22:10
**omitted** 10:17 15:19
**once** 12:7 21:5
**one-page** 24:3
**Ontiveroz** 12:7
**on-campus** 23:15
**open** 9:5 10:7,15
**openness** 20:18
**opens** 9:25
**opinion** 19:23 20:12
**opposed** 9:16 15:14
**opposition** 5:7
**ORAL** 1:12
**order** 5:8 16:24 17:7
19:10 23:14,16,24 24:3
**ordered** 23:25
**ordinance** 15:22 16:14,15
16:17 17:11,17,20
**organization** 22:18
**Organizing** 3:23 22:3
**outweighs** 21:22
**overcome** 8:23 20:10

**P**

**page** 1:16 2:1 15:18
**palpable** 19:25
**parade** 15:23 16:4 17:12
**paren** 12:24,25
**part** 17:11
**participants** 23:17
**particularized** 14:14
**party** 4:3 5:12 18:14

**Party's** 18:20,22
**pass** 9:14 15:21
**Pasture** 9:5,8
**patently** 13:6
**peace** 19:9
**pending** 5:6 13:22
**people** 23:3,5
**People's** 4:3 18:14
**perception** 22:23
**period** 8:14
**periods** 21:11
**permissive** 20:20
**permit** 11:7 15:23 16:1
17:12,24 18:1
**Persichitte** 13:8
**person** 20:14
**Pettus** 15:3
**Philadelphia** 4:9 11:2
**phone** 11:23
**place** 6:19 10:12 23:22
**plaintiff** 17:15 24:5
**plaintiffs** 1:4,18 5:12 8:1
8:11 9:4 10:18 16:3
20:23 21:2,8,21 23:15
23:23
**planned** 22:8
**play** 21:5
**please** 5:5 24:9
**plucked** 19:23
**point** 21:4
**police** 3:18 11:10 13:10,21
13:22 14:2 17:12
**policies** 14:10
**Policy** 23:19
**portion** 17:19
**posed** 7:1 19:12
**position** 7:6 8:17 9:10,20
14:6 15:13 19:15 20:5
**powder** 15:7
**power** 19:10
**powerful** 20:8
**precedent** 17:20 18:18
19:4
**predictions** 11:20
**preliminary** 1:13 5:11,15
5:21,25 21:4,9,23
**present** 16:2 19:7
**presenting** 14:14
**preservation** 22:2
**president** 1:6 9:8 13:25
14:9 18:24
**presumably** 9:8
**presumed** 21:15
**presumes** 8:15
**pretextual** 9:11
**pretty** 12:22
**prevent** 16:21 18:5 19:10
**Prexy's** 9:5,8
**prick** 12:20
**prior** 17:17,22
**private** 6:6 8:10

**privilege** 16:23
**Procedure** 23:8
**proceedings** 5:1 24:19
25:5
**profane** 12:23
**Professor** 7:21 22:8,23
23:9,15
**prohibited** 8:13 10:25
11:16 18:12
**prohibiting** 23:9
**prohibition** 11:12 16:20
**prohibits** 9:4
**proper** 18:22
**property** 6:7 10:7
**proposed** 7:7
**proposition** 18:19
**protect** 23:5
**protected** 6:10,24 21:21
**protection** 11:13
**protest** 11:24 16:5
**provide** 13:18 19:14
23:17
**provided** 5:7 12:14
**provision** 16:11 17:21
**provisions** 23:19
**provoke** 17:13 18:2
**prudent** 23:5,16
**public** 5:17 6:13 8:10 9:4
9:15,16,22,25 10:1,4,8
10:9,11,21 18:11 19:8,9
22:1,23
**public's** 22:7
**Pulaski** 16:5 17:6
**punish** 19:10
**purpose** 10:10
**pursuant** 8:6 23:8
**put** 23:2
**p.m** 1:5,5 5:1 24:19

**Q**

**question** 7:1 19:2,12
**questions** 7:22
**quite** 19:20
**quote** 6:1,2,11,14,16 7:15
7:16,19,21 8:6,11,18 9:1
9:3,6,15,16,16,17,24
10:16,22,22,23 11:1,4,6
11:11,14,24,25 12:4,4,5
12:6,7,9,16,21,24 13:2,3
13:3,10,11,11,12 15:23
16:2,11,13,18,25 17:2,8
17:13,14,21 18:7,19,23
19:7,11,24,25 20:9,21
21:10,12,14,15 22:1,3
**Qusair** 1:19

**R**

**racial** 15:8
**Racism** 17:16
**range** 7:13
**reaction** 11:1,5 18:6

read 13:5
real 7:6
reason 7:23
reasonable 6:20 10:9
  23:14
reasons 20:22 23:7
receive 13:15
received 7:17 8:21 22:12
receiving 13:13
recess 24:18
recognize 12:23
recognizes 19:4
recognizing 23:6
recollection 22:9
reconcile 9:2
record 14:3 18:19 23:7
  25:5
recoverable 5:23
referred 23:11
referring 13:23 17:1
Reform 3:7 11:8
refusal 7:23
regard 23:18
regarding 7:22 13:22
regimentation 20:11
regulation 6:19 11:6
reiterated 7:23
rejected 15:12
rejecting 18:16
relate 17:23
related 8:21
relatively 20:20
relayed 14:4
relevant 6:15 9:13 19:5
  20:7
relief 5:15,23 21:7
remaining 21:3
remains 22:20
remember 22:14
rental 7:13
repetition 19:25
reported 2:6 13:10 16:6
reporter 2:6 24:2,11,13
  25:1,2,7
represent 9:3
requested 5:21 7:3
require 7:13
requirements 21:24
requires 21:23
requisite 6:16
reserve 7:14
Resources 4:19 5:18
respect 7:6 17:19 20:1
  21:20 22:1
response 8:2,20 19:16
  22:7
rested 14:8
restraining 18:22
restraint 17:17,22
restriction 6:17,18,20
  8:12 9:13,20 10:8,19,21

10:24 19:1
restrictions 6:6 10:13
result 11:19 18:18
retires 24:17
retreat 9:10
Rice 2:2,3 19:16 24:8
ridiculous 13:6
right 16:12,25 17:8 20:10
  24:14
rights 8:24 13:1 14:22
  15:2 17:4,4,5 18:6 21:14
  22:2 23:1,4,5,6
Ringers 4:3 18:15
riot 19:8
riots 15:24 16:21
rise 5:2 24:16
risk 20:16
Rock 12:8,10
role 21:5
Room 2:7
Route 15:2
Rules 23:8
ruling 1:12 24:2

──────────
S
──────────

S 2:2 25:6
sadly 14:15
safety 17:23 19:9 23:17
sanctions 17:24
satisfied 13:18 20:23 21:7
satisfy 6:15
says 8:13 12:23 20:16,16
scarcely 22:19
scheduling 7:11,15 23:15
  23:19
scope 5:21
scrutiny 6:18 10:4
scumbag 12:16
seasons 23:1
seated 5:5
second 5:14 20:2
security 13:19,19 14:2
See 18:14 21:17,24
selective 10:5
Selma 14:22 15:2,6
seminal 19:17
send 12:8
sent 8:4
SENTER 2:3
serious 8:21 19:25
serve 10:13 15:14 19:1
  22:24
served 10:10 22:16
serves 22:3
session 5:4
set 23:7
Sheriff's 3:8 11:8
Shero 4:7 10:16
show 5:25 8:25
showed 18:19
significant 10:13

similar 16:14
Similarly 17:9 21:20
simplification 19:3
simply 7:23 19:21,23
sir 24:13
six 15:4
skeptical 9:18
SOB 12:19
social 15:8
socialist 4:3 12:25 18:14
society 20:20
somewhat 9:7
sort 20:17
south 2:7 15:7
so-called 17:25
speak 7:8 9:1 10:20 12:6
  22:21
speaker 13:14 18:5
speakers 10:6
speaking 7:7 9:4 11:16
  16:20 23:10
specific 7:2 8:25
spectators 18:21 23:17
speech 6:7,9,19,23 8:19
  8:22 9:9 10:6,8,24,25
  11:5 12:25 13:23,24
  15:14 16:13 17:6,22
  19:1,18 21:22 22:8
speech-related 14:8
spoken 20:13
Sports 7:4 23:10
Springs 12:8,10
staff 12:3
Stalder's 13:17
stand 24:18
standard 6:16,16 9:21
standing 18:25
stands 14:13
start 20:15
Startzell 4:9 11:1
state 8:15 14:21 15:4,12
  18:2,5,8 19:10
stated 8:18 11:11 21:10
statement 9:2,3 12:12,22
  19:23,24
states 1:1,14 12:16 14:20
  22:16,21 25:3
State's 15:16
steps 23:14,16
storm 23:3
story 13:9
Street 1:20
streets 19:9
strength 20:18
stressed 18:8
strict 6:17 10:4
strung 13:11
subject 10:3
substance 8:3
substantial 5:13 20:24
  21:1,5

substitute 16:24
succeed 21:2
success 5:14 20:24 21:6
suffer 5:14 21:9
sufficient 15:14
sufficiently 10:7
suggests 7:6 22:7
Suite 1:20,23 2:3
summarized 8:4
Sunday 15:1,1
support 9:19
supports 19:15
suppress 17:6 18:9
suppression 16:19,23
Supreme 5:9 6:5 11:4
  16:15 17:20 18:3,18
  19:16 21:10
surrounding 22:22
survive 6:17
Susan 7:18
suspects 22:6
swallow 22:19
symbolic 19:18
system 20:9
S.Ct 4:19 5:18

──────────
T
──────────

tailored 10:14
take 8:2 12:8 14:5 20:16
  23:13,16
taken 13:20
takes 23:18
talking 12:7
tear 15:5
telephone 8:3,6,9
tempest 23:3
Tennessee 15:21 16:5,9
Tenth 5:9,20 6:4,22 9:23
  10:17 21:17,19
terms 14:10
terrorist 12:17
test 5:11
testified 7:10 13:13
testimony 7:25 9:7 13:7
  13:17
Thank 24:6,14
thin 18:2
thing 12:18
think 12:20
third 5:15 6:14 11:2
Thirty 13:16
Thomas 2:2
thoughts 13:5
thousand 13:16
threat 12:1,2 13:6 15:17
  17:3 18:21 19:9
threatened 21:21
threatening 12:11 13:14
threats 8:21,25 11:20
  13:17 14:3,13,14 15:13
  18:25

**three** 21:3
**three-step** 6:5
**time** 6:19 10:12 15:7 16:1 21:11 23:21 24:5
**timely** 13:10
**Tinker** 4:11 8:24 19:18 20:2
**tips** 5:16
**today** 14:18 20:8 24:3
**told** 7:11,14 12:6
**tolerate** 12:25
**Tom** 1:7
**touched** 14:16
**traffic** 19:8
**transcript** 1:12 24:1 25:4
**treads** 18:2
**trial** 5:24
**trouble** 20:12
**try** 24:9
**Tupelo** 3:4 17:9
**Twenty-five** 15:20
**two** 9:24 19:16
**types** 9:24 10:6

**U**

**unambiguous** 8:16
**unconstitutional** 16:11,18
**uncontrolled** 16:22
**Underground** 22:15
**understood** 18:25
**undifferentiated** 8:22 11:17 14:12 20:9
**undoubtedly** 16:21
**unduly** 18:8
**unfettered** 14:8
**unfortunately** 12:24
**ungrateful** 13:2
**uniform** 22:16
**uninvited** 13:24
**Union** 3:2 5:19
**United** 1:1,14 14:20 22:16 22:21 25:3
**university** 1:6,6 5:7 7:3,8 7:11,18,20,24 8:6,14,18 9:5 10:20 11:15,19 12:3 12:4,14 13:15,20,22 14:1 19:22 22:8 23:10 23:13,18,21
**University's** 7:6 8:2,17,20 9:10,19 14:5 20:4
**unpersuasive** 9:11
**unquestionably** 19:2 21:12
**unreasonable** 23:22
**unrest** 15:8
**urged** 19:5
**use** 9:19 14:8 18:16
**Utah** 4:13 21:17
**UW** 12:17
**U.S** 2:7 3:6,13,14,16,20 4:2,11 6:8 11:4 15:2

16:16 19:7,17,18 20:21 21:13

**V**

**v** 3:2,4,6,7,10,12,14,16,18 3:20,21,24 4:2,3,5,7,9 4:11,13,15,17,19 19:17
**vague** 12:11
**valid** 6:18
**value** 14:7
**variation** 20:12
**veiled** 11:19 14:13
**venue** 7:3,20 8:7,13
**venues** 8:10
**version** 8:1
**versus** 5:17,19 6:3,7,21 8:24 10:16 11:2,3,8,9 14:24 16:7,15 17:2,9 18:15 19:6,18,20 20:2 21:13,16,18 22:4
**veterans** 22:17
**veto** 10:22,23 11:7 17:25 18:4
**vetoes** 11:12
**Video** 1:17
**viewpoint** 11:14
**viewpoint-neutral** 10:10
**views** 16:19 18:9 20:14
**vigor** 20:19
**violence** 8:21,25 14:15,16 15:9,13,18,24 17:3 18:17,20,21,25
**violent** 11:1 14:15
**virtual** 15:7
**visit** 11:25 22:8
**VS** 1:5

**W**

**W** 1:18
**Wallace** 4:17 14:24 17:2
**want** 8:9 12:2
**weather** 22:15 23:2
**Wednesday** 23:11
**Weidel** 7:18,19,23 8:5,5
**weigh** 6:1
**welcome** 7:8
**welfare** 17:23
**Wells** 4:15 6:21
**what's** 14:25
**White** 4:3 18:14
**widely** 20:12
**William** 1:3,13 8:8
**Williams** 4:17 14:23 17:1
**Willson** 13:13
**Winter** 4:19 5:17
**wishes** 22:21
**withstand** 9:21
**witnesses** 13:7
**Wolcott** 2:7
**word** 8:3 20:13
**words** 11:6 20:6,7

**Worshippers** 3:21 16:8
**worst** 13:3
**writing** 20:6
**written** 14:9
**wrote** 8:5 15:16
**Wyoming** 1:1,6,6,6 2:8 5:7 7:4,8,11,18,20 8:7 8:14,18 10:20 12:5 13:21 14:1 22:9 23:10 23:13 25:4
**Wyoming's** 23:18

**Y**

**years** 15:20 20:8 22:10
**yesterday** 14:17 18:24
**you're** 12:24

**$**

**$650** 7:13
**$800** 7:13

**1**

**1** 1:16 8:11
**1:43** 1:5 5:1
**10** 4:8
**10th** 3:2,11 4:6,8,13,15
**10-CV-79-D** 1:4
**100** 4:17 14:24
**1010** 4:4 18:15
**1014** 4:4 18:15
**1061** 4:13 21:18
**1076** 4:13 21:18
**109** 15:18
**11** 3:8,16,18 4:10
**1100** 1:23
**111** 2:7
**1132** 4:15 6:21
**1138-39** 4:15 6:21
**1149** 3:2 5:20
**1155** 3:2 5:20
**1163** 21:25
**1196** 4:8 10:16
**12** 14:25
**123** 3:16 11:4
**129** 4:19 5:18
**13** 16:5
**134** 3:16 11:4
**1370** 3:10 21:17
**1376** 3:10 21:17
**14** 4:17
**1494** 3:24 22:5
**1543** 1:20
**16** 3:20,22
**17** 3:4
**1700** 2:3,3
**18** 4:4
**183** 4:10 11:2
**19** 3:6 4:2
**1939** 3:20 16:16
**194** 3:2 5:19 21:25
**1940** 3:6 19:7

**1965** 4:17 14:19,25 15:1 17:4
**1969** 4:11 19:19 20:7
**1971** 22:16
**1973** 4:4 18:16
**1976** 3:14 21:13
**1981** 3:4,11 17:10 21:17
**1985** 3:13 6:8
**1990** 3:22 16:5,9 17:6
**1992** 3:16 11:4
**1996** 3:24 22:5
**1999** 3:2 5:20

**2**

**2** 1:16 2:1,1
**2:25** 1:5 24:19
**2001** 4:13,15 6:22 21:19
**2004** 3:18 4:6 6:4 11:11
**2007** 4:2,8 10:17 19:17
**2008** 3:8 4:10,19 5:19 11:2,9
**2010** 1:5 23:12
**21** 3:11,14 4:13
**217** 2:7
**22** 3:24
**240** 4:17 14:24
**256** 4:13 21:18
**257** 4:15 6:21
**265-5280** 2:8
**271** 1:5
**28** 7:12 23:11
**296** 3:6 19:7

**3**

**3d** 4:10
**30** 13:13
**307** 2:8 3:20 16:16
**308** 3:6 19:7
**310** 3:6 19:6
**347** 3:14 21:13
**365** 4:19 5:18
**373** 3:14 21:13
**374** 4:19 5:18
**375** 3:18 11:10
**389** 4:6 6:3
**393** 4:2,11 19:17,18 20:21

**4**

**4** 4:4 18:15
**4th** 4:4
**4.29.10** 25:6
**40** 20:8 22:10
**400** 1:20
**427** 3:14 21:13
**473** 3:13 4:4 6:8 18:15
**496** 3:20 16:16

**5**

**5** 3:2 4:19
**5th** 3:4 13:23
**502** 3:4 17:10

**503** 4:11 19:18
**505** 3:16 11:3
**508** 20:21
**509** 18:13 20:21
**510** 4:8 10:16 18:13
**516** 3:20 16:16
**533** 3:8 4:10 11:2,9
**551** 4:2 19:17

---

**6**

**6** 3:13 4:6,15
**600** 15:1
**65(a)(1)** 23:8
**660** 3:10 21:17
**664** 3:4 17:9

---

**7**

**7** 15:1,11
**735** 3:22 16:8
**745** 3:22 16:8
**749** 16:13
**750** 17:8
**780** 3:8 11:9
**785** 3:18 11:10
**788** 3:13 6:8
**7887** 1:22
**797** 6:13

---

**8**

**8** 4:11
**8th** 3:18
**80** 15:3
**80111** 1:23
**80202** 1:21
**80290** 2:4
**82601** 2:8

---

**9**

**9th** 3:8
**922** 3:24 22:4
**973** 4:6 6:3
**975** 4:6 6:4